UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20204-CIV-KING

SCOTTSDALE INSURANCE
COMPANY,

      Plaintiff,

v.

GFM OPERATIONS, INC.,
TONNIE STEEN,

      Defendants.
_____/

## OPINION GRANTING FINAL DECLARATORY JUDGMENT

**THIS CAUSE** comes before the court upon the Parties' Cross-Motions for Summary Judgment (DE #20; DE #21). The Court has been fully briefed on the matter.[1]

**I.   Background**

This is a declaratory judgment action related to an insurance coverage dispute. Plaintiff Scottsdale Insurance Company ("Scottsdale") seeks interpretation of an insurance policy it issued to Defendant GFM Operations, Inc. ("GFM"). More specifically, Plaintiff seeks a judgment declaring that it has no duty to defend its insured, GFM, in an ongoing state court lawsuit revolving around a shooting that occurred on GFM's premises in 2006.[2] (DE #1). Plaintiff also

---

[1] Defendant Tonnie Steen's Motion for Summary Judgment (DE #20) was filed November 4, 2010. Plaintiff Scottsdale Insurance Company filed a Response (DE #22) November 24, 2010. Plaintiff filed its Motion for Summary Judgment (DE #21) November 4, 2010. Defendant filed a Response in Opposition (DE #23) November 23, 2010, and Plaintiff filed a Reply (DE #24) December 13, 2010.

[2] Plaintiff filed the instant Complaint for Declaratory Judgment on January 22, 2010, seeking a judgment pursuant to 28 U.S.C § 2201 and Rule 57 of the Federal Rules of Civil Procedure against Defendants GFM Operations, Inc. and Tonnie Steen for the purpose of determining a question of actual and immediate controversy between the parties. (DE #1).

seeks judgment declaring that it has no duty to indemnify its insured against any claims or losses resulting from the 2006 shooting, or, alternatively, that any coverage under the policy is limited to $50,000 pursuant to a sub-limit clause in the policy. *Id.* The Court initially ordered the Parties to engage in limited discovery and submit briefs on the relevant legal issues. (DE #12). Upon review of the briefs, the court ordered further discovery and set deadlines for filing summary judgment motions. (DE #18). The instant Cross Motions for Summary Judgment followed.

## II. Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all

2

inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III. Undisputed Facts

#### A.  The Shooting

Defendant GFM owns and operates a flea market. Defendant Tonnie Steen worked for GFM at the flea market. He worked in maintenance, which entailed welding, electrical and plumbing repairs, carpentry, and occasionally collecting money from patrons entering the flea market. Defendant Steen worked three twelve-hour shifts at GFM each week, on Friday, Saturday and Sunday. He ran his own welding business during the remaining four days each week, and GFM permitted Defendant Steen to keep some of his welding equipment on the flea market premises. Although Steen had a regular work schedule, GFM occasionally asked him to perform tasks on days Steen was not scheduled to work.

On Wednesday, June 7, 2006, Defendant Steen was not scheduled to work. Nonetheless, GFM's general manager asked Steen to move a concrete barrier with a forklift if Steen was going to be on the GFM premises that day. Steen was in fact going to GFM that day to pick up his welding tools, and he moved the barrier with a forklift while he was there. Steen, who is a salaried employee, was not paid extra for what he characterized as this "favor." GFM's general manager also described the task as a "favor," but explained that Steen could have moved the barrier on Wednesday while he was there, or simply waited to do it until he was scheduled to work later in the week.

3

After moving the barrier, Steen returned the forklift to its storage location and began to leave the GFM premises. Steen had recently purchased a new pickup truck, and wanted to show it to a friend on the way out. About two to five minutes after moving the barrier, Steen and his friend walked toward the truck. Suddenly, Steen heard a woman screaming and saw a man running. Steen instinctively grabbed the man as he ran by, and attempted to hold the man down. During this struggle, a second unidentified man shot Steen in the stomach. The unidentified men, who were attempting to rob an automatic teller machine ("ATM") on the GFM premises, fled the scene. Steen was rushed to the hospital by one of the flea market's merchants. Although Steen was later told by GFM's manager that Florida's workers' compensation laws would not apply to his case, GFM applied for workers' compensation benefits on Steen's behalf. Subsequently, GFM's workers' compensation insurance carrier paid Steen's medical bills. Steen continued to receive his salary for several months after the shooting, but he never returned to work at GFM and GFM ultimately stopped paying him.

**B.    The Scottsdale Insurance Policy**

Scottsdale issued Policy number BCS001126 ("the policy") to Defendant GFM. (DE #21-1). The policy, which covers "general commercial liability," was in effect from September 19, 2005 to September 19, 2006. *Id.* By its terms, the policy provides insurance coverage for "bodily injury" if the injury is caused by an "occurrence" that takes place within the "coverage territory" during the policy period.[3] There is no dispute that Steen sustained "bodily injury"

---

[3]"Bodily injury" is defined in the policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at a time." (DE #1, Form CG 00 10 12 04, Section V(3)). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (DE #1, Form CG 00 01 12 04, Section V(13)). "Coverage territory" means, in relevant part, "the United States of America (including its territories and possessions), Puerto Rico and Canada." (DE #1, Form CG 00 01 12 04, Section V(4)(a)).

4

caused by an "occurrence" within the "coverage territory" while the policy was in effect.

However, the policy also limits coverage through a list of exclusions. (DE #1, Section I(2)). At issue here are the exclusions titled "Workers' Compensation and Similar Laws" and "Employer's Liability," which narrow the coverage available for injuries to GFM employees. The policy provides:

> This insurance does not apply to:
>
> **Workers' Compensation and Similar Laws.**
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> **Employer's Liability.**
> "Bodily injury" to:
> (1)  An "employee" of the insured arising out of and in the course of:
>      (a)  Employment by the insured; or
>      (b)  Performing duties related to the conduct of the insured's business.
>
> This exclusion applies:
> (1)  Whether the insured may be liable as an employer or in any other capacity; and
> (2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(DE #1, Form CG 00 01 12 04, Section I(2)(d)–(e)). In addition, the policy caps the coverage available for injuries or damage resulting from assault and battery. The policy limit for such injury is $50,000. (DE #1, Form GLS-215s (4-00)).[4]

---

[4]The policy provides, in relevant part:

Except as provided by this coverage form, this policy does not apply to "injury," "bodily injury," "property damage," or "personal and advertising injury" ("personal injury" or "advertising injury") arising from:

> 1.  Assault and/or battery committed by:
>     a.  Any insured;
>     b.  Any employee of any insured; or
>     c.  Any other person; or

5

### C. The State Court Lawsuit

Defendants GFM and Tonnie Steen are opposing parties in the underlying lawsuit, *Tonnie Steen v. Opa Locka Hialeah Flea Market Association, Inc., and GFM Operations*, Case No. 07-79811-CA-06, filed on or about December 24, 2008. In the underlying lawsuit, Tonnie Steen asserted several negligence causes of action arising out of the shooting on the GFM premises. According to the allegations in the underlying complaint, on or about June 7, 2006, Mr. Steen was a business invitee on the premises of Opa Locka Hialeah Flea Market Association, Inc., and/or GFM, when a gunman allegedly entered one of the shops on the property and shot Mr. Steen in the stomach. (DE #1). Plaintiff Scottsdale has been defending Defendant GFM in the Underlying Lawsuit subject to a reservation of rights under the policy.

### IV. Discussion

In its Complaint for Declaratory Judgment, Scottsdale seeks declaration of its obligations to GFM in the underlying lawsuit. Specifically, Scottsdale alleges that it owes neither a duty to defend GFM in the underlying lawsuit, nor a duty to indemnify it against losses arising from the shooting of Tonnie Steen. An insurer's duty to defend its insured and its duty to indemnify its insured are distinct issues that are governed by different standards. Accordingly, they will be addressed separately here.

### A. Duty to Defend

In Florida, an insurer's duty to defend is broader than the duty to indemnify. *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp. 2d 1319, 1323 (M.D. Fla. 2010). Whether an insurer has a duty

---

2. The failure to suppress or prevent Assault and/or Battery by any person in 1. above.

(DE #1, Form GLS-215s (4-00)). The "coverage form" referenced above provides for a $50,000 limit of liability for each claim of injury or damage resulting from an assault and/or battery. *Id.*

6

to defend its insured "is determined solely by the claimant's complaint if suit has been filed." *Higgins v. State Farm Fire and Casualty Co.*, 894 So. 2d 5, 9–10 (Fla. 2004). It is well settled that the insurer's duty to defend against a legal action is triggered "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). Furthermore, the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Smithers Constr., Inc. v. Bituminous Casualty Corp.*, 563 F.Supp. 2d 1345, 1348–49 (S.D. Fla. 2008). In fact, "when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." *Jones*, 908 So. 2d at 443. Moreover, "any doubts regarding the duty to defend must be resolved in favor of the insured." *Id.*

Accordingly, whether Scottsdale must defend GFM in the underlying lawsuit depends upon whether the allegations in Steen's underlying complaint "fairly and potentially bring the suit within policy coverage." In the underlying complaint, Steen alleged he was a business invitee on the GFM premises when he was shot. (DE #1, State Court Compl. ¶ 6). It is clear from the face of the policy that a business invitee who was shot while lawfully present on the GFM premises would be covered by the policy. Plaintiff Scottsdale, having had the benefit of discovery, now argues that Defendant Steen was not on the GFM premises as a business invitee. However, the allegations in the underlying complaint are controlling here. *Jones*, 908 So. 2d at 442–43. Those allegations "fairly and potentially bring the suit within policy coverage," and Scottsdale therefore had a duty to defend its insured, GFM, in the underlying lawsuit at the time it was filed.

However, the duty to defend does not continue indefinitely. Rather, an insurer must

defend a claim only until it is certain that the claim is not covered by the policy at issue. *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1102–03 (Fla. 4th DCA 1995). Put another way, "the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify." *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F.Supp. 2d 1142, 1146 (M.D. Fla. 2005); *see also Sinni v. Scottsdale Ins. Co.*, 676 F.Supp. 2d 1319, 1329 (M.D. Fla. 2009) (finding that although complaint triggered duty to defend, duty ceased because "it was manifestly obvious that the actual facts put Plaintiff's claims outside the scope of coverage"); *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 777–78 (11th Cir. 2008) (unpublished)[5] (recognizing that in some cases, "Florida law permits [an] equitable departure from the general treatment of a duty to defend"). Thus, whether Scottsdale has a continuing duty to defend GFM in the underlying lawsuit depends on whether Scottsdale has a duty to indemnify GFM against loss for the claimed injuries.

B.   **Duty to Indemnify**

In Florida, the duty to indemnify is not determined by the allegations in the complaint, but is instead controlled by the actual facts of the underlying lawsuit. *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F.Supp. 2d 1142, 1147 (M.D. Fla. 2005). In this context, exclusion clauses in insurance policies "are typically read strictly and in a manner that affords the insured the broadest possible coverage." *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp. 2d 1319, 1323 (M.D. Fla. 2009). To address the indemnification issue, the Court looks to the facts revealed during discovery.

---

[5]Pursuant to Eleventh Circuit Rules, "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

1. **Workers' Compensation Exclusion**

    a. **Workers' Compensation Coverage, Generally**

The policy excludes from coverage "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (DE #1, Form CG 00 01 12 04, Section I(2)(d)). As an initial matter, the payment of workers' compensation benefits to Steen by GFM's workers' compensation insurance carrier does not in and of itself mean Steen's injury resulted in an "obligation of the insured under a workers' compensation . . . law," precluding coverage. *Alvarado v. Manro, Inc.*, 550 So. 2d 1174, 1175 (Fla. 3d DCA 1989) ("The fact that [the employer] paid the [employee] workers' compensation benefits does not in itself afford [the employer] a workers' compensation immunity against . . . suit.").

To be compensable under Florida's Worker's Compensation Law, an injury must "arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances." *Strother v. Morrison Cafeteria*, 383 So. 2d 623, 628 (Fla. 1980); Fla. Stat. § 440.09(1) (providing employer must pay compensation where employee suffers injury "arising out of work performed in the course and scope of employment."). Under this standard, an employee does not necessarily have to be completing a work task at the moment of injury for the injury to be compensable. *See, e.g., Strother*, 383 So. 2d at 628 (holding employee assaulted and robbed at her home covered by workers' compensation law where robbers followed employee home from work); *Jenkins v. Wilson*, 397 So. 2d 773, 774–5 (Fla. 1st DCA 1981) (finding worker's compensation law applied to employee who was raped while walking to her car after staying late at work because her employment made her more susceptible to attack). On the other hand, the occurrence of an employee's injury at

9

the place of employment does not in itself establish that the injury occurred in the course and scope of employment. *Aloff v. Neff-Harmon*, 463 So. 2d 291, 294–95 (Fla. 1st DCA 1984) (reversing finding that employee's injuries on employer's premises were compensable as a matter of law under workers' compensation statute). However, an employee who is injured while staying at his place of employment "for an unreasonable period of time after completing his business" is not entitled to workers' compensation benefits. *Am. Legion Post No. 30 v. Gailey*, 498 So. 2d 1321, 1323 (Fla. 1st DCA 1986).

Whether an injured workman is an employee whose injury arose out of and in the scope of his employment is ordinarily a question of fact to be resolved by the trier of fact. *Vasquez v. Sorrells Grove Care, Inc.*, 288 So. 2d 222, 224 (Fla. 2d DCA 2010); *Rogers v. Barrett*, 46 So. 2d 490, 490 (Fla. 1950). A fact question exists even where the facts are undisputed, if more than one inference may be reasonably drawn from the undisputed facts. *Aloff v. Neff-Harmon*, 463 So. 2d 291, 293 (Fla. 1st DCA 1984) ("Genuine issues of fact may arise on undisputed facts where different inferences may reasonably be drawn therefrom."). Summary judgment "is appropriate *only* when the facts are so crystalized that nothing remains but questions of law and there is not the slightest doubt as to any issue of material fact." *Id.* (internal quotations and citations omitted).

*Aloff v. Neff-Harmon* illustrates these concepts. 463 So. 2d 291, 293 (Fla. 1st DCA 1984). In *Aloff*, a cocktail waitress stayed at the lounge where she was employed after finishing her shift because the manager requested that she do so. *Id.* at 292. The waitress and the manager were close personal friends. *Id.* at 293. They talked about both work and personal matters, and she performed a few tasks which assisted the manager in closing the business for the night. *Id.* While attempting to leave, the manager and waitress were accosted by five armed men, who

robbed, assaulted, and raped the waitress. *Id.* at 293. The waitress sued the lounge, and the trial court granted summary judgment to her employer on the ground that workers' compensation benefits were the exclusive remedy for the waitress's injuries. *Id.* The First District Court of Appeal reversed on the ground that whether the waitress's remaining at work after clocking out "was in the scope and course of her employment, or . . . purely a personal undertaking beyond the scope of her employment, was a question of fact for the jury." *Id.* at 294. The court found "reasonable but conflicting inferences" arose from the undisputed facts: that the plaintiff was assisting the manager with closing the business, or that her purpose in staying late was purely social and unrelated to her employment. *Id.*

      The undisputed facts of the instant case similarly give rise to competing and conflicting inferences. Steen went to work on a day off for the dual purpose of completing an employment-related task and a personal task. He was not specifically paid for the employment task, but he was a salaried employee who occasionally performed tasks on days off. He had completed the task prior to being injured, but only about two to five minutes before the injury occurred. However, at the moment he was shot, Steen was showing a friend his new truck, a clearly personal undertaking unrelated to his employment. Nonetheless, he was still on his employer's premises, and was leaving the premises after completing a work assignment. Like the facts in *Aloff*, the facts of the instant case support two inferences: that Steen was leaving his employer's premises after completing work (an act incidental to employment that is generally covered by Florida's Workers' Compensation Law), or that he was remaining on the premises to engage in a purely personal task unrelated to his employment. Accordingly, under general principles of workers' compensation law, the Court can not find as a matter of law that Steen's injuries did or did not arise in the course and scope of his employment.

### b. The Positional Risk Doctrine

Steen was injured while attempting to stop a robbery in progress on his employer's premises. Pursuant to the positional risk doctrine, "an employee's injury is compensable [under workers' compensation laws] if it was incurred in the rescue of a complete stranger, provided the employment brought the employee to the place where he observed the situation calling for the rescue attempt." *Rockhaulers, Inc. v. Davis*, 554 So. 2d 654, 656 (Fla. 1st DCA 1989). However, "the injury need not flow directly from the nature of the employment. . . . All that is required is that the employment place the claimant in a position which requires him by ordinary standards of humanity to respond to an emergency." *D.L. Cullifer & Son, Inc. v. Martinez*, 572 So. 2d 1360, 1362 (Fla. 1990). Furthermore, a rescue attempt carried out after an employee stops acting in the course and scope of employment may nonetheless be compensable under workers' compensation. *Southern Wine and Spirits, Inc. v. Gonzalez*, 429 So. 2d 1294, 1294–95 (Fla. 1st DCA 1983). "The scope of an employee's employment is impliedly extended in an emergency to include the performance of any act designed to save life or property in which the employer has an interest." *Id.* at 1295 (quoting IA Larson's *Workmen's Compensation Law* § 28.11 (1982)).

In *Southern Wine and Spirits, Inc. v. Gonzalez*, two employees stopped making scheduled deliveries for their employer so that they could pick tomatoes with a friend. *Id.* at 1294. The friend tried to scare one of the employees by firing a gun near him. *Id.* The other employee stepped in front of his co-employee to protect him, and was then shot in the head. *Id.* The court found the injured employee had initially deviated from him his employment by stopping work for personal reasons, but "[w]hen [the friend] started firing the gun, . . . an emergency situation was created, and thereafter, to the extent that [the employee] attempted to protect . . . a co-

12

employee, he was acting in the employer's interest. Consequently, [the employee]'s injury arose out of and in the course and scope of his employment." *Id.* at 1294–95.

Florida courts have found that injuries arising from other "true emergencies" that are similarly only tangentially related to employment are compensable under workers' compensation. *See D.L. Cullifer & Son,* 572 So. 2d at 1360-1, 1363 (holding fruit pickers injured while helping push a stranger's disabled vehicle from highway were engaged in "an endeavor to alleviate [a] danger . . . considered incidental to [their] employment"); *Rockhaulers,* 554 So. 2d at 656–57 (finding positional risk doctrine required compensation under workers' compensation for truckdriver who was struck by vehicle after leaving his truck to assist accident victims on highway).

The undisputed facts in the instant case are that Steen attempted to respond to a "true emergency" on his employer's premises only two to five minutes after completing a work task. Stopping a robbery on an employer's premises is more closely connected to "the employer's interest" than moving a disabled vehicle from a highway travel lane, *D.L. Cullifer & Son,* 572 So. 2d at 1360-1, or helping an accident victim on a public highway, *Rockhaulers,* 554 So. 2d at 656. Accordingly, even if Steen was not otherwise acting in the course and scope of his employment, "the scope of [Steen]'s employment [was] impliedly extended" to respond to this emergency for the benefit of his employer. *Id.* at 1295. This finding "supports the sound public policy of encouraging employees to undertake humanitarian acts designed to prevent imminent harm to the public." *D.L. Cullifer & Son,* 572 So. 2d at 1363. Although conflicting inferences arise in the context of the general principles of workers' compensation law discussed above, there are no conflicting inferences in the context of the positional risk doctrine. A finder of fact could not reasonably infer from these facts that Steen was engaged in something other than a

13

rescue attempt during a "true emergency," or that such a rescue, if successful, would be in his employer's interest. Accordingly, Steen was acting within the course and scope of his employment when he was shot, and the workers' compensation exclusion in the policy bars coverage of Steen's claims.

### 2. Employer's Liability Exclusion

Scottsdale further argues that the "Employer's Liability Exclusion" in the commercial general liability policy issued to GFM excludes Steen's injuries from coverage. This exclusion bars coverage for bodily injuries to GFM employees that both "arise out of the course and scope of employment by the insured" and that "arise out of the course and scope of performing duties related to the conduct of the insured's business." (DE #1, Form CG 00 01 12 04, Section I(2)(e).

The Florida Supreme Court has held that in commercial general liability policies, the term "arising out of" should be read very broadly and requires only "some causal connection, some relationship." *Taurus Holdings. Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539–40 (Fla. 2005). The reasoning underlying the broad interpretation of employer's liability exclusions like the one at issue here is the purpose of such exclusions—the only coverage intended, and the only coverage for which a premium has been paid, is for liability to the general public as opposed to liability for the insured's employees. *Fla. Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890, 892 (Fla. 3d DCA 1997). Accordingly, "an employer's liability exclusion for bodily injury to an employee 'arising out of and in the course of employment' encompasses claims that are potentially broader than workers' compensation obligation and may only have a limited causal relationship to employment." *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1333 (M.D. Fla. 2009).

14

Here, even if Steen's claims were not barred by the workers' compensation exclusion, they are barred by the employer's limited liability exclusion because his injury has at least "a limited causal relationship to employment." Steen was on his employer's premises, was leaving work shortly after completing an employment task, and was engaging in a rescue attempt that was in the interest of his employer. This fits well within a broad reading of the policy's "arising out of" language. Furthermore, the employer's liability exclusion requires only that the injury arise out of "performing duties related to the conduct of the insured's business" to preclude coverage. This "performing duties related to the conduct of the insured's business" language is in itself broad, and is certainly broader than the language embodied in the workers' compensation exclusion (which applies where an injury "arise[s] out of the course and scope of employment by the insured"). Even if Steen's injury did not arise out of his employment, the rescue attempt and even the act of leaving the premises after working, relate to the conduct of GFM's business.

In addition, two other courts have found identical employer's liability exclusions barred recovery for injuries that had a somewhat distant causal connection with performing work duties. *Sinni*, 676 F.Supp. 2d at 1333 (holding exclusion precluded coverage for employee who slipped and fell on pathway to parking lot after finishing work); *XL Ins. Am., Inc. v. Ortiz*, 673 F.Supp. 2d 1331, 1333–34 (S.D. Fla. 2009) (finding employer's liability exclusion rendered injuries resulting from misuse of company time or "horseplay" outside the scope of coverage). Furthermore, in *Sinni*, the court specifically held that the plaintiff, who fell while exiting the premises after work, "was on the [employer]'s premises not as a 'business invitee' but as an employee," and that her employment was therefore a but-for cause of her injury. *Sinni*, 676 F.Supp. 2d at 1333. Similarly, Steen was on the GFM premises as an employee on the day he

15

was injured. He was not on the premises as a patron of the flea market, as he argues. There is no evidence on this record that Steen paid an entrance fee to the flea market, shopped at any of the flea market's vendors, or engaged in any other conduct typical of a flea market patron. Undoubtedly, GFM would not request or even permit a patron of the flea market to operate a forklift on the premises. As the court found in *Sinni*, the Court now finds that "irrespective . . . of whether [Steen's] injuries amounted to an obligation under Florida's workers' compensation statute, the employer's liability exclusion in Scottsdale's CGL policy also precludes coverage." *Id.*

## V. Conclusion

In the Complaint for Declaratory Judgment, Plaintiff Scottsdale sought judgment declaring its obligations to Defendant GFM under the policy at issue here, specifically its obligation to defend GFM in the underlying lawsuit and its obligation to indemnify GFM against loss for the June 7, 2006 shooting. For the foregoing reasons, the Court finds Scottsdale does not have a duty to indemnify GFM in the underlying lawsuit, and therefore no longer has a duty to defend GFM in the underlying lawsuit.

Accordingly, after a careful review of the record and the court being otherwise fully advised in the premises, it is **ORDERED, ADJUDGED and DECREED** as follows:

1. Plaintiff Scottsdale's Motion for Summary Judgment **(DE #21)** is **GRANTED.**

2. Defendant Tonnie Steen's Motion for Final Summary Judgment **(DE #20)** is **DENIED.**

3. Plaintiff Scottsdale has no continuing duty to defend Defendant GFM in the underlying lawsuit, *Tonnie Steen v. Opa Locka Hialeah Flea Market Association, Inc., and GFM Operations*, Case No. 07-79811-CA-06.

4.  Plaintiff Scottsdale has no duty to indemnify GFM for the injuries to Defendant Steen arising from the shooting that occurred on GFM's premises on June 7, 2006.

5.  This case is **DISMISSED.**

6.  The Clerk shall **CLOSE** this case.

7.  All other pending motions are **DENIED as moot.**

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 12th day of April, 2011.

*/s/ James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:  *Plaintiff's Counsel*

**Bridget Elizabeth Remington**
Phelps Dunbar
100 South Ashley Drive
Ste. 1900
Tampa, FL 33602
(813)222-7668
Email: remingtb@phelps.com

**Patricia Anne McLean**
Phelps Dunbar, LLP
100 S Ashley Drive
Suite 1900
Tampa, FL 33602-5311
813-472-7550
Fax: 813-472-7570
Email: mcleanp@phelps.com

cc:  *Defendant's Counsel*

**Sheldon Lee Zipkin**
Sheldon Zipkin

17

2020 NE 163rd Street
Suite 300
North Miami Beach, FL 33162

**James Curtis Blecke**
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

305-446-5700

Email: jcblecke@bellsouth.net

**James Judson Soper**
Timothy K. Barket, P.A.
19 West Flagler Street
Suite 1212
Miami, FL 33130
305-373-6711
Fax: 305-373-4770
Email: jsoper@mindspring.com